IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:18-CR-160-LMB |
| KEISHA L. WILLIAMS, | Trial: October 15, 2018 |
| Defendant. | |

**GOVERNMENT'S PRE-TRIAL MEMORANDUM
REGARDING THE ATTORNEY-CLIENT PRIVILEGE**

The Government files this pre-trial memorandum regarding certain testimony that the Government plans to elicit from two of the Defendant's previous attorneys. This testimony is key evidence in the Government's case, and is perfectly permissible under the doctrine of attorney-client privilege either because it does not concern any attorney-client communication at all, or because the Defendant has clearly and unequivocally waived the privilege with respect to the subject matter of the communication.

LEGAL STANDARD

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). However, because the privilege stands "in derogation of the search for truth," *United States v. Nixon*, 418 U.S. 683, 710 (1974), the Fourth Circuit has warned that it "is to be narrowly construed, and recognized 'only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)) (citing *United States v. Oloyede*, 982 F.2d 133, 141 (4th

1

Cir. 1993); *In re Grand Jury Subpoenas*, 902 F.2d 244, 248 (4th Cir. 1990); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984)).

A party claiming the privilege bears the burden to demonstrate its applicability, through the following classic test:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (citation omitted).

## DISCUSSION

**I.     Dr. Roland Deissenberger**

The first attorney witness the Government intends to call is Dr. Roland Deissenberger, an Austrian intellectual property attorney who represented the Defendant with respect to her purchase of the telehealth software that is at issue in this case.[1]

    A.     Purpose for Which Dr. Deissenberger Was Retained

Dr. Deissenberger will briefly testify to the purpose for which he was retained. In *In re Grand Jury Subpoena*, 204 F.3d 516 (4th Cir. 2000), the Fourth Circuit explained that "the general purpose of the work performed [is] usually not protected from disclosure by the attorney-client privilege because such information ordinarily reveals no confidential professional communications between attorney and client." *Id.* at 520 (citations and internal quotation marks omitted).

---

[1] As an Austrian attorney, Dr. Deissenberger must abide by the attorney-client privilege law of Austria. He has represented to the Government that none of the testimony the Government intends to elicit from him at trial violates Austrian law on the attorney-client privilege.

B. <u>Fee Arrangements, Payment History, and Logs of Communications</u>

Dr. Deissenberger will also testify about the fees he was to be paid, the amounts he was actually paid, and the frequency (but not the content) of his communications with the Defendant. Courts have held that this type of testimony is not covered by the attorney-client privilege. *See, e.g.*, *In re Grand Jury Subpoena*, 204 F.3d at 520 ("[T]he amount of the fee [and] the identification of payment by case file name . . . are usually not protected from disclosure by the attorney-client privilege because such information ordinarily reveals no confidential professional communications between attorney and client." (citations and internal quotation marks omitted)); *United States v. Kendrick*, 331 F.2d 110, 113 (4th Cir. 1964) (holding that "[i]t is the substance of the communications which is protected, [ ] not the fact that there have been communications"); *In re Grand Jury Proceedings*, 33 F.3d 1060, 1063–64 (9th Cir. 1994) ("Information regarding the fee arrangement is ordinarily not part of the subject matter of the professional consulting and therefore is not privileged communication even though it may evidence wrongdoing by the client." (citations and internal quotation marks omitted); *In re Grand Jury Proceedings*, 689 F.2d 1351, 1352 (11th Cir. 1982) (attorney must comply with grand jury subpoena for records of dates, places or times of meetings and communications with a particular client, and further holding that "matters involving the receipt of fees from a client are not normally within the privilege" (citation omitted)).

Even if the above testimony were considered to constitute privileged communications, the Defendant clearly waived that privilege, as explained in the next section below.

C. <u>Alleged Communications Disclosed to Third Parties</u>

The Government plans to introduce text messages about Dr. Deissenberger that the Defendant sent to Christian D'Andrade and others for the purpose of raising money for the software scheme alleged in the Superseding Indictment. In these text messages, she relayed

3

information to include: (1) the amount of attorney's fees that were owed to Dr. Deissenberger; (2) the amount she had already paid or was paying to Dr. Deissenberger; (3) the frequency and methods by which she was communicating with Dr. Deissenberger; and (4) things that Dr. Deissenberger allegedly said to her in relation to the software. The Government expects Dr. Deissenberger to deny the truth of these text messages.

It is black-letter law that such testimony does not violate the attorney-client privilege, because the Defendant purposefully disclosed the subject matter of this testimony to a third party. As the Fourth Circuit held in *Jones*, "[a]ny voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." *Id.*, 696 F.2d at 1072 (citation omitted); *see also In re Grand Jury Proceedings*, 727 F.2d at 1356 (holding that "the loss of the privilege . . . extends to the substance of a communication, since the disclosure of any significant part of a communication waives the privilege" (citations and internal quotation marks omitted)); *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) (selective disclosure of a privileged communication for tactical purposes waives the privilege). The disclosure to a third party does not need to be true to constitute waiver of the subject matter of the disclosure. *See, e.g.*, *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997) ("The attorney-client privilege does not forbid an attorney from exposing his client's lie where the client has revealed the lie to a third party.").

Here, Dr. Deissenberger will testify that he did not represent Christian D'Andrade with respect to the software purchase, and in fact had never heard of Christian D'Andrade until he was interviewed by law enforcement in connection with this criminal matter. By sharing what Dr. Deissenberger allegedly told her with Christian D'Andrade, a third party outside the privilege, the Defendant therefore waived whatever privilege she may have held with respect to the subject

4

matter of those communications. *See, e.g.*, *In re Grand Jury Subpoena*, 341 F.3d 331, 337 (4th Cir. 2003) (appellant waived privilege with respect to an attorney-client communication he told FBI agents about, such that government could question appellant's attorney about the truth of appellant's statements to the FBI); *Hawkins*, 148 F.3d 379 (permissible to call attorney as a witness to testify about whether his client's deposition testimony about the non-existence of a certain attorney-client communication had been truthful); *Collis*, 128 F.3d 313 (permissible for attorney to testify about circumstances under which client submitted a forged letter to the district court).

    D.    <u>The Truth or Falsity of Certain Facts</u>

The Government anticipates that Dr. Deissenberger will also testify to the truth or falsity of certain facts—for example, facts about Dr. Deissenberger or about the software in question—that are alleged in text messages that the Defendant sent to Christian D'Andrade, and in a letter written by Dr. Deissenberger to third parties at the Defendant's request.

Such testimony does not violate the attorney-client privilege because it does not relate to a <u>communication</u> between the Defendant and Dr. Deissenberger, but rather to facts or actions, which are outside the ambit of the privilege.

**II.**    **Marlon Ritchie**

The second attorney witness the Government intends to call is Marlon Ritchie, a Florida-based attorney who performed various tasks for the Defendant in relation to the software scheme alleged in the Superseding Indictment.

    A.    <u>Information Intended for Third Party Disclosure</u>

The majority of Marlon Ritchie's testimony will concern certain letters that he wrote to third parties—potential lenders or investors—at the explicit request of the Defendant. The Government anticipates that Marlon Ritchie will testify that the information contained in these

letters was given to him by the Defendant.

It is well-established law that no privilege applies to communications made with the intention that it be thereafter revealed to third parties. *See, e.g.*, *Jones*, 696 F.2d 1069 (no privilege over communications that the defendants used in order to convince potential investors to part with their money); *In re Grand Jury Proceedings*, 727 F.2d at 1356 (noting that "courts have consistently 'refused to apply the privilege to information that the client intends his attorney to impart to others…,' or which the client intends shall be published or made known to others," and citing cases from multiple circuits); *United States v. Moazzeni*, 906 F. Supp. 2d 505, 511 (E.D. Va. 2012) ("It is well-established that providing factual matter to an attorney for preparation of documents intended for third-party transmission does not bring those facts within the protection of the privilege.") (citations omitted)). Here, where the Defendant communicated certain facts to Marlon Ritchie with the express directive to pass it along to third parties, it is obvious that the Defendant waived the privilege. *See, e.g.*, *Garfinkle v. Arcata Nat'l Corp.*, 64 F.R.D. 688, 689–90 (S.D.N.Y. 1974) (waiver includes not only the letter provided to a third party, but testimony as to how that letter came into being; the defendant "simply cannot use the letter as both a sword and a shield").

Moreover, the "crime fraud exception" to the attorney-client privilege clearly applies to these communications. The Fourth Circuit instructs that "[b]oth the attorney-client and work product privileges may be lost . . . when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proceedings #5*, 401 F.3d 247, 251 (4th Cir. 2005) (citation omitted). The party invoking the crime-fraud exception must make a *prima facie* showing of (1) "evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed," and (2) "a close

6

relationship between the attorney-client communications and the possible criminal or fraudulent activity." *Id*. The attorney need not be aware of the illegality involved. *Id.*

Here, the Government will be able to make this *prima facie* showing that the Defendant was committing fraud, and that the information she communicated to Marlon Ritchie—primarily false representations about the existence of large sums of money imminently to be at the Defendant's disposal—was given to him in order that he might put them in letters to potential lenders for the purpose of inducing them to give the Defendant money. The crime-fraud exception therefore applies and vitiates the attorney-client privilege with respect to these communications.

> B.  Fee Arrangements and Payment History

The Government plans to introduce text messages about Marlon Ritchie that the Defendant sent to Christian D'Andrade and others for the purpose of raising money for the scheme alleged in the Superseding Indictment. In these text messages, she relayed information to include the amounts of money that Marlon Ritchie was allegedly demanding in return for services related to the scheme. The Government expects Marlon Ritchie to deny the truth of these text messages. For the same reasons stated in Sections I.B and I.C, *supra*, this testimony is not barred by the attorney-client privilege.

## CONCLUSION

For the reasons discussed above, the attorney-client privilege is not a bar to the testimony the Government will seek to elicit from Dr. Roland Deissenberger and Marlon Ritchie, either because the testimony does not involve any communication that was ever encompassed by the privilege, or because the privilege was waived by the Defendant.

        Respectfully submitted,

        G. Zachary Terwilliger
        United States Attorney

By:     /s/  Grace L. Hill
        Grace L. Hill
        Jack Hanly
        Assistant United States Attorneys
        2100 Jamieson Ave.
        Alexandria, VA 22314
        (703) 299-3700
        grace.hill@usdoj.gov
        jack.hanly@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 9, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filing (NEF) to all counsel of record.

                                                           By:   /s/ Grace L. Hill
                                                                       Grace L. Hill
                                                                       Counsel for the United States